[Crim. No. 228. Fourth Appellate District.—July 15, 1932.]

THE PEOPLE, Respondent, v. H. B. GREEN, Appellant.

Utley & Nuffer for Appellant.

U. S. Webb, Attorney-General, and Frank Richards, Deputy Attorney-General, for Respondent.

HARDEN, J., *pro tem.*—Defendant appeals from a judgment pronounced upon the verdict of a jury finding him guilty of murder of the second degree and from the order of the court denying his motion for a new trial. The information charged that on or about October 28, 1931, the defendant unlawfully killed and murdered Henry Lester Warren, sometimes known as Ed Warren, a human being.

There is but one point raised on the appeal. Contending that the evidence is insufficient to support the judgment, appellant asks that said judgment be modified, pursuant to the provisions of section 1181, subdivision 6 of the Penal Code, by reducing the offense from that of murder of the second degree to that of manslaughter.

Defendant and said Ed Warren had been employed in the baling of hay on a ranch near Bond's Corner in Imperial County. Warren was a large man and weighed 168 or 170 pounds, while defendant weighed only 103 pounds. During the morning of October 28, 1931, defendant, Warren, Mike Sunday, Cecil Wilson, and Husie Green, who was a

nephew of defendant, went by automobile to Calexico. After their arrival at Calexico the members of the party made several trips back and forth between Calexico and Mexicali, Mexico. On each trip to Mexicali they drank whisky. Defendant drank at least five glasses of whisky. After returning to Calexico, defendant and Warren argued about the weight of hay they had baled, defendant claiming that Warren had "shorted" him in the weighing. Warren threatened to drag defendant out into the street and whip him. At about 1 o'clock in the afternoon, defendant, Warren, Husie Green and Mike Sunday left Calexico in Warren's car to return to their homes near Bond's Corner. Cecil Wilson returned in another car. On the return trip defendant and Warren continued to argue about the weights of the hay and defendant called Warren a liar. When they had reached a point near what is called the Ten-Foot Drop, Warren stopped his car and pulled defendant out on to the road and struck him in the face twice, causing his mouth to bleed. During the course of the trouble, Husie Green took from defendant's pocket a knife which was "leaning out". Near this point, Cecil Wilson, traveling by automobile, came upon the scene. Sunday then got into Wilson's car and all parties proceeded a short distance to a house formerly occupied by Warren. Upon getting out of the automobile at said house, defendant, who was quite drunk, fell forward and struck his head against the spring shackle of the car, skinning his forehead. Defendant thereupon stated that he wanted to walk to his home but was induced to wait. He went into the house and lay down. Warren had brought with him a luncheon which he divided between the parties. Defendant ate part of the food and drank some coffee. They remained there thirty or forty-five minutes. While at this place defendant stated to Warren, "Ed, you choked me down the road," to which Warren replied, "You know damned well I didn't". Defendant thereupon called Warren a liar and Warren "got up and got straddle of defendant and started to push in on his chest". Warren was persuaded to get off defendant and thereafter they appeared to become friendly. Defendant stated to Warren, "Ed, anyone is a fool to be as good friends as we have been and get in a fight like that, aren't they?" Warren replied, "They sure are." Thereupon, they shook

hands. Defendant then said someone had taken his gun away from him and that he thought it had occurred while he was in Calexico; and he inquired if anyone had his gun. He was told that he had not had any gun, but he contended to the contrary and continued to talk about it. The parties then prepared to leave said place for the purpose of taking defendant to his home. Before departure, Warren inquired of defendant in a joking manner, ''You won't let your old lady jump onto me for bringing you in drunk''?, to which he replied, ''No, she won't bother you.'' They appeared to be friendly. Thus far the evidence is without substantial conflict.

The evidence of the prosecution's witnesses from this point on is substantially as follows: Warren and defendant proceeded to ride in Warren's car to defendant's home. Wilson and Husie Green rode in Wilson's car. On the way the cars became separated but met near defendant's home, where they were stopped, and the occupants conversed. Warren and defendant appeared to be friendly. Warren and defendant then drove into the yard surrounding defendant's house, followed shortly by Wilson and Husie Green in the other car. Warren brought his car to a stop near the northeast corner of the house. Defendant got out of the car, stepped to the door of the house on the north side near the northeast corner, procured a shotgun, and placed himself a few feet in front of the car. At that time Warren was seated in the front seat of the automobile on the left side behind the steering-wheel. The door of the automobile to his immediate left was open and the window down. He was leaning over and was engaged in petting a dog. While he was thus seated, defendant shot him directly in the mouth. Warren died almost immediately. A charge of shot and the wadding from the shotgun shell were found embedded in the muscles of his throat. The testimony of a physician and surgeon was to the effect that the carotid artery was severed; that the injury and shock thus sustained by Warren were sufficient to render him unconscious instantly; that it would be unusual for a person after having received such an injury to take a step or make a move; that he would expect such person to collapse immediately in the direction in which he was leaning. He testified that the charge of shot had not spread to a width of over one

and one-half inches and gave it as his opinion that the gun was held at a point between five and ten feet from Warren at the time it was fired. The gun was a 16-gauge single-barrel shotgun and the shell contained No. 5 or No. 6 shot. No footprints were noted in the immediate neighborhood of the automobile on the side on which Warren had been seated. He was found lying stretched out at right angles to the automobile with his feet resting on the running-board. No blood was found on Warren's car.

Defendant's testimony was to the effect that he had not ridden to his home in Warren's automobile; that he had gone there in the automobile of Cecil Wilson; that upon arrival he had gone into his house; that shortly thereafter he heard a car drive up and stop and heard someone "holler"; that he walked to the door and saw Warren in his car; that Warren then said to him, "I will whip hell out of you and your wife both"; that Warren got out of the car; that defendant reached through a window, got his shotgun, and told Warren to stop; that Warren made another step and started for defendant; that defendant was in fear of being killed by Warren and fired under the influence of that fear. There was no claim that Warren was armed. Defendant's testimony was corroborated by that of his wife. The day following the shooting defendant was examined and found to have a cut one and one-half inches long above his left eye and a lump below his right eye. The inside of his lower lip was cut and his arms were scratched.

Appellant's contention that the evidence does not support the judgment is based upon the single fact that no blood was found upon Warren's car. Starting from this premise, he argues that Warren could not have been seated in the car at the time of the shooting, and contends that the jury should have accepted and acted upon defendant's version of the occurrences immediately surrounding the homicide. The point raised obliges us to examine the evidence to the extent of determining whether it is sufficient to support the verdict. We may not pass upon the weight of conflicting testimony.

We cannot say that the absence of blood on Warren's car after the shooting is so inconsistent with the other facts established by the prosecution as to require an adoption of defendant's evidence as to the occurrences at the time of the

shooting. Under the peculiar circumstances it is very probable that, upon being shot, Warren slipped and fell headlong from his car in such a manner as to prevent its becoming spattered with any blood. That was evidently the view the jury took of the situation. We think there was ample evidence to support such view.

Said point as to what inferences might be drawn from the evidence raises the question of whether or not the evidence is sufficient to sustain the implied finding of the jury that in the shooting the defendant was actuated by malice. If there was malice, either express or implied, the homicide was murder. (Secs. 187, 188, 189, Pen. Code.) We think the evidence was ample to justify the finding that defendant was actuated by malice at the time of the shooting. Considerable time had elapsed since the last dispute between him and Warren. They had spoken of their foolishness in having engaged in a fight and had shaken hands. They seemed to be on friendly terms and had ridden together from the scene of the last altercation to defendant's house. There was ample cooling time between the time of the trouble at the house formerly occupied by Warren and the shooting to warrant a finding that defendant was not acting under the influence of a sudden quarrel or heat of passion. Doubtless the jury charged the act to ill will engendered by what defendant regarded as mistreatment received by him at the hands of Warren earlier in the day.

There is no need for further discussion nor citation of authorities. Our conclusion that the evidence was sufficient to justify the jury in finding that in the commission of the homicide the defendant was actuated by malice is a complete answer to the only point raised on the appeal.

The judgment and order denying a new trial are affirmed.

Barnard, P. J., and Marks, J., concurred.